IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GERALD E. SEARS, #406-707,   *

Petitioner,   *

v.   * Civil Action No. JKB-14-2929

STATE OF MARYLAND   *

Respondent.   *

***

### MEMORANDUM OPINION

Petitioner Gerald E. Sears ("Sears") seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, attacking the constitutionality of his 2014 convictions in the Circuit Court for Baltimore County. (ECF No. 1.) At the Court's direction, Sears filed a supplement to the Petition (ECF No. 3.) Respondents were ordered to file an answer to the petition and have done so. (ECF No. 8.) This matter has been fully briefed. Upon review, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (Petitioner not entitled to hearing under 28 U.S.C. § 2254(e)(2)). For reasons that follow, Sears's petition for writ of habeas corpus IS DENIED AND DISMISSED WITH PREJUDICE.

### Background and Procedural History

On October 5, 2009, Sears was indicted by a Grand Jury in Baltimore County and charged with first-degree murder (Count 1), armed robbery (Count 2), two counts of use of a handgun in commission of a felony (Counts 3 and 4), and distribution of cocaine (Count 5).

(ECF No. 1-2 at 6-8; ECF No. 8-1 at 6-8.) On May 4, 2012, after a jury trial, Sears was convicted of first degree murder, use of a handgun in commission of a felony,[1] and distribution of cocaine. (ECF No. 1-2 at 6-7, 14; ECF No. 8-1 at 6-7, 14.) He was found not guilty of armed robbery. (ECF No. 1-2 at 6; ECF No. 8-1 at 6.) Sears was sentenced on August 10, 2012, to a term of life in prison without the possibility of parole on Count 1, a consecutive term of twenty years on Count 4, and another consecutive term of twenty years on Count 5. (ECF No. 1-2 at 6-7, 14; ECF No. 8-1 at 6-7, 14.) Sears filed a Notice of Appeal on September 6, 2012[2] (ECF No. 1-2 at 15; ECF No. 8-1 at 15), and, in an unreported opinion filed on August 6, 2014, the Court of Special Appeals of Maryland affirmed Sears's judgments of conviction (ECF No. 1-1). The court's mandate issued on September 5, 2014. (ECF No. 8-1 at 16.) It does not appear that Sears filed for a petition for writ of certiorari in the Court of Appeals of Maryland. (ECF No. 1-2; ECF No. 8-1.)

Sears filed his federal petition on September 9, 2014,[3] alleging that the Circuit Court erred in denying his motion to suppress based on a violation of *Miranda v. Arizona*. (ECF No. 1.) Pursuant to the Court's September 24, 2014, Order (ECF No. 2), Sears filed a supplement to the petition on October 15, 2014[4] (ECF No. 3) ("Supplemental Petition"). On February 11, 2015, Respondents filed their answer. (ECF No. 8.) Sears did not file a reply.

---

[1] The State dismissed the second charge of use of a handgun in commission of a felony. (ECF No. 1-2 at 6; ECF No. 8-1 at 6.)

[2] Sears subsequently filed an application for review by a three-judge panel and a motion for modification of sentence, both of which were denied. (ECF No. 1-2 at 15; ECF No. 8-1 at 15.)

[3] The Petition is dated September 9, 2014, and is deemed filed on that date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[4] *See* n.2.

2

## Standard of Review

Section 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### I. Threshold Considerations

#### A. Limitations Period

A one-year statute of limitations applies to habeas petitions in non-capital cases for persons convicted in state court. *See* 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.§ 2244(d)(1).

Pursuant to § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The same is not true, however, with respect to federal petitions. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding that § 2244(d)(2) does not toll the limitation period during the pendency of federal habeas petition).

### B. Exhaustion

The exhaustion doctrine, codified at 28 U.S.C. § 2254(b)(1),[5] "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts [are] equally bound to guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (alteration in original) (internal citations and quotation marks omitted). Moreover, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation ...." *Id.* Thus, the *Rose* Court cautioned litigants, "before you bring any claims to federal court, be sure that you first have taken each one to state court." *Id.* at 520; *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) ("Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.").

---

[5] Section 2254(b)(1) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
> (A) The applicant has exhausted the remedies available in the courts of the State; or
> (B) (i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the
>    rights of the applicant.
> (C) An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he has the right under the law of the state to raise, by any available procedure, the question presented.

### C. Procedural Default

In *O'Sullivan*, the Supreme Court stated: "To ... 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts." 526 U.S. at 848 (internal citation omitted); *see also id.* at 844 ("Section 2254(c) requires only that state prisoners give the state courts a *fair* opportunity to act on their claims."). The inquiry, then, is "[w]hether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has *properly* presented his claims to the state courts. ... Because we answer this question 'no,' we conclude that [petitioner] has procedurally defaulted his claims." *Id.* at 848. Stated differently, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. The *O'Sullivan* Court noted, however, that:

> In this regard, we note that nothing in our decision today requires the exhaustion of any specific remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has "*the right under the law of the State to raise, by any available procedure,* the question presented." (Emphasis added.) The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available.

*Id.* at 847-48; *see also Breard v. Pruettt*, 134 F.3d 615, 619 (1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)) ("A procedural default also occurs when a habeas petitioner fails to exhaust available State remedies and 'the court to which the petitioner would

be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'").[6]

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice resulting from the alleged violation of federal law; or (2) that failure to consider the claim on the merits would result in a fundamental miscarriage of justice, *i.e.*, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some factor external to the defense [that] impeded counsel's efforts to raise the claim in State court at the appropriate time." *Id.* In order to demonstrate prejudice, a habeas petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 (quoting *Frady*). Even when a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

## II. Analysis Framework

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of

---

[6] A procedural default may also occur when a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent State procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Breard*, 134 F.3d at 619.

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis," a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.*

Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593

7

F.3d 372, 378 (2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

## Discussion

Sears alleges that the trial court erred in denying his motion to suppress statements made after he had invoked his right to counsel. (ECF No. 3-1 at 5; *see also* ECF No. 3 at 5.) Sears raised this claim on direct appeal (ECF No. 8-3 at 2, 7), and the Court of Special Appeals concluded that the trial court "committed no error in denying Sears's motion to suppress statements made during his interrogation" (ECF No. 1-1 at 3), and affirmed the judgments of the circuit court (*id.*). Respondents maintain that Sears failed to present his claim to all appropriate state courts and that, as a result, he has procedurally defaulted the claim. (ECF No. 8 at 13-14, 21.) Further, Respondents argue, Sears has not stated a basis for relief under § 2254(d). (*Id.* at 22.)

The court must first determine whether Sears's claim is properly exhausted. "Where questions concerning exhaustion arise, the petitioner bears the burden of demonstrating that state remedies have, in fact, been exhausted." *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994). Sears has not met that burden. His petition in this Court is entitled "Petition for Writ of Certiorari." (ECF No. 1 at 1.) Sears states that he "seeks to have reviewed the order of the Court of Special Appeals" dated August 6, 2014. (*Id.*) Further, the petition bears the designation in the caption, "In the Court of Appeals for Maryland." (*Id.*). Sears's criminal docket reflects the filing of a petition for writ of certiorari in the Circuit Court for Baltimore County on September 15, 2014. (ECF No. 8-1 at 15.) That is the same date Sears's "Petition for Writ of Certiorari" was docketed in this Court. (ECF No. 1.) In a prior order, this Court noted the

uncertainty, stating that it was unclear whether Sears was seeking certiorari review in state court or seeking federal habeas relief. (ECF No. 4 at 1.)

> If Sears's intention is to seek certiorari review in state court, he must file a petition for writ of certiorari in the Court of Appeals of Maryland. If Sears's intention is to file for federal habeas relief in this court pursuant to 28 U.S.C. § 2254, he is reminded that petitions filed pursuant to § 2254 are subject to the exhaustion requirement set forth in 28 U.S.C. § 2254(b) and (c) ....

(*Id.*) The court ordered Sears to indicate whether he wanted to proceed with the § 2254 case as filed or dismiss the Petition without prejudice. (*Id.* at 2.) Sears did not respond.

Adding to the confusion are conflicting responses in Sears's supplemental petition. On page 3, Sears indicates that he did not file a petition for a writ of certiorari to the Maryland Court of Appeals, but that he did file for review by the United States Supreme Court. (ECF No. 3 at 3.) In the attachment to the supplemental petition, he indicates that he filed a petition for writ of certiorari in the "Circuit Court for Maryland, the United States District Court" on September 9, 2014, and did not file for certiorari in the United States Supreme Court. (ECF No. 3-1 at 3.) The September 9, 2014, filing is likely the petition for writ of certiorari filed in the Circuit Court for Baltimore County noted above.

The Court concludes that Sears has not exhausted his state court remedies. *See O'Sullivan*, 526 U.S. at 845 ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). Moreover, the time for filing a petition for certiorari in the Court of Appeals has expired. *See* Md. Rules, Rule 8–302(a) (stating that petition for writ of certiorari must be filed "not later than the later of 15 days after the Court of Special Appeals issues its mandate or 30 days after the filing of that court's opinion"); *see also* Md. Code Ann., Cts. & Jud.

9

Proc. § 12-201. The circuit court docket does not reflect the filing of an application for post-conviction review. (ECF No. 1-2; ECF No. 8-1). Therefore, Sears has procedurally defaulted his claim.[7]

Sears may overcome the procedural default of his claim by showing both cause for the default and actual prejudice stemming from the default of the claim, or that failure to consider the claim on the merits would result in the conviction of one who is actually innocent. *See Carrier*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. Sears does not address the cause factor or argue prejudice. Although the Court again notes the confusion with respect to the initial petition, when directed to clarify whether he wished to proceed with the petition in this court or file for certiorari in the Maryland Court of Appeals (ECF No. 4 at 2), Sears failed to respond. If, in fact, Sears intended to file the Petition in the Court of Appeals and, instead, filed it in the wrong court (the circuit court and/or this Court), his mistake cannot constitute "cause" for the procedural default. *See Breard*, 134 F.3d at 620 (citing *Carrier*, 477 U.S. at 488) (noting that "cause" consists of "some objective factor external to the defense"); *see also Coleman*, 501 U.S. at 753 (noting that, in *Carrier*, "[w]e explained clearly that 'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him"). Any mistake in filing "can fairly be attributed" to Sears. Therefore, Sears has not shown cause to excuse his procedural default. Because Sears has not shown cause for his procedural default, the court need not address prejudice. *See Breard*, 134 F.3d at 620.

---

[7] Respondents state that "[g]iven that the claim was ripe for presentation to the Court of Appeals but was not [presented], the claim likely would not be considered by the post conviction court if re-raised in post conviction proceedings." (ECF No. 8 at 13 (citing Md. Code Ann., Crim. Proc. § 7-106(b) (2008).) Therefore, Respondents conclude, Sears's claim has been procedurally defaulted. (*Id.* at 14.)

With respect to "actual innocence," Sears has not made—or attempted to make—a proper showing that declining to consider the petition would result in a fundamental miscarriage of justice. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Moreover, under the standard established in *Carrier*, Sears must show that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* at 327; *cf. Breard*, 134 F.3d at 620. Nowhere in his filings does Sears claim that he is actually innocent of the crimes for which he was convicted or present any "new reliable evidence" to support a claim of innocence.[8] Therefore, the Court concludes that Sears cannot use actual innocence as a gateway to have his otherwise barred constitutional claim considered on the merits. *Schlup*, 513 U.S. at 316.

Nonetheless, a federal court may deny a habeas petition on the merits, despite the petitioner's failure to exhaust his state court remedies. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Here, Sears's allegation of error fails on the merits, as both the circuit court and Court of Special Appeals found.

Prior to trial, Sears moved to suppress his October 6, 2009, statement to the police that he had made after almost two hours of questioning. (ECF No. 1 at 5; ECF No. 1-1 at 6; ECF No. 1-2 at 11; ECF No. 8-1 at 11; ECF No. 8-2 at 22.) Sears argued that his question to the detective as to "whether there was a lawyer he could speak to" constituted an invocation of his right to

---

[8] The closest Sears comes to an actual innocence argument is his statement, "There are many ways to tie a suspect to a crime scene: fingerprints, DNA, evidence, eyewitness testimony, confession, and so on. No such proof linked [him] to the house in which Scott Greenberg died." (ECF No. 1 at 8.)

11

counsel and that the police should have ceased questioning at that point. (ECF No. 1 at 6-7; ECF No. 1-1 at 9.) He further argued that any statements he made after that point should have been suppressed. (ECF No. 1 at 7; ECF No. 1-1 at 9, 15.) The Court of Special Appeals described the situation and quoted the detective's testimony:

> Following his arrest on October 6, 2009, Sears was questioned by Detective Jacoby. At the outset, Sears waived in writing his *Miranda* rights .... Roughly an hour into the interview, the following exchange occurred:
>
>> [Sears]: All I want to know is can I have a cigarette and can I make one phone call?
>>
>> [Detective Jacoby]: I'm not going to let you make a phone call but I'll get you a cigarette, okay? I'll be right back. Think about what I said, all right.
>>
>> [Sears]: Is there a, is there a lawyer I can speak with?
>>
>> [Detective Jacoby]: Say what?
>>
>> [Sears]: A lawyer I can speak with?
>>
>> [Detective Jacoby]: I don't have anybody. If you know somebody that you want to call, let me know.
>>
>> [Sears]: Because I want to make a phone call.
>>
>> [Detective Jacoby]: Who do you want to call?
>>
>> [Sears]: My girl, she knows a lawyer.
>>
>> [Detective Jacoby]: Okay. Give me a few minutes, all right?
>
> Detective Jacoby then exited the interview room for an undetermined amount of time, returned with a cigarette, gave it to Sears, and lit it. As Detective Jacoby was walking away, Sears asked:
>
>> [Sears]: Do you have a minute?
>>
>> [Detective Jacoby]: Yeah.

12

(ECF No. 1-1 at 6-7 (footnote omitted).) At this point, a brief conversation ensued, during which Sears asked Detective Jacoby if the detective was going to assault him, because he had "seen that on television." (*Id.* at 7.) After Detective Jacoby assured Sears that he was not, stating, "I'm not like that. I'd like to think you know that by now" (*id.* at 8), Sears responded:

> [Sears]: Okay. Yes, I did sell.
>
> [Detective Jacoby]: Okay.
>
> [Sears]: Yes, I did do that.

(*Id.*)

The Court of Special Appeals next turned to Detective Jacoby's testimony on cross-examination at the suppression hearing:

> [Defense Counsel]: Detective Jacoby, I just want to ask you a couple of questions. I mean, when Mr. Sears said to you ... can he speak with a lawyer. Do you remember that?
>
> [Detective Jacoby]: I thought it was, Do you know a lawyer?
>
> [Defense Counsel]: Do you know a lawyer. Okay. Let's say, Do you know a lawyer. I was just going by your notes actually.
>
> [Detective Jacoby]: Can I see that? Maybe I can answer your question.
>
> [Defense Counsel]: If there's a lawyer he can speak to.
>
> [Detective Jacoby]: Okay.
>
> [Defense Counsel]: That's just by your notes.
>
> [Detective Jacoby]: Okay. Is there a lawyer he can speak to.
>
> [Defense Counsel]: Does that refresh your recollection - -
>
> [Detective Jacoby]: Yes.

> [Defense Counsel]: - - basically about what he said? And that was after you talked to him - - I guess it was two hours into the interview. What did you take that to mean?
>
> [Detective Jacoby]: Do you know a lawyer.
>
> [Defense Counsel]: Okay. And your response was, I don't have anyone, or, I don't know anyone.
>
> [Detective Jacoby]: It might have been I don't know anyone. I have to watch the video again.
>
> [Defense Counsel]: What did you think he meant? Do you think he wanted a lawyer at that point?
>
> [Detective Jacoby]: No. I think he was asking me if I knew a lawyer.

(*Id.* at 8-9; ECF No. 8-2 at 21-22 (alteration in original).) Counsel next asked, "Why do you think he was asking you if you knew a lawyer," and the prosecutor objected. (ECF No. 8-2 at 22.) After a brief discussion, the questioning continued:

> THE COURT: Did you take that to mean he wanted to call a lawyer?
>
> THE WITNESS: No, I did not.
>
> THE COURT: Okay. Next question.
>
> BY MR. ROSENBERG:
>
> Q. Why?
>
> MR. LIPPE: Objection.
>
> THE COURT: Overruled.
>
> A. That wasn't his question. His question was, Do you know a lawyer? I interpreted that to mean did I know somebody.

(*Id.* at 24.)

The circuit court denied the motion to suppress, explaining:

> All right. As to the issue of voluntariness in speaking to these detectives, the detective on cross said he didn't take the phrase, Do you know a lawyer I can speak to, as a request to get an attorney at that time. So he asked a question, he answered it. As I pointed out earlier, at 20:49, he acknowledged when speaking to the other detective, Defendant said he realized he didn't have to talk to the detective.
>
> About an hour and a half before that, around 19:24 on the tape when Detective Jacoby came back into the room ending his last phone call, the Defendant says quote I'm going to get a lawyer, close quote. He said that to whoever he was speaking to on the telephone with the detective present. And from what I observed on the recording, that was the only time the Detective was in the room while the Defendant was on the telephone. He got off the phone and continued the conversation for another hour and a half before he tells the other Detective, I realize I don't have to talk to you. So it's very clear to me he knew what his rights were. He knew he had a right to an attorney. He could have requested one, but he didn't. So the motion to suppress on that issue is denied.

(ECF No. 1-1 at 9; ECF No. 8-2 at 30-31.)

On appeal, Sears contended that the circuit court erred in refusing to suppress all statements he made after invoking his right to counsel. (ECF No. 1-1 at 15; ECF No. 8-3 at 2.) The State responded that Sears did not clearly and unequivocally invoke his right to counsel and, alternatively, even if Sears did invoke his right to counsel, he then waived that right because he initiated further conversation with Detective Jacoby thereafter. (ECF No. 1-1 at 15; ECF No. 8-4 at 7-8.)

In a lengthy and thorough analysis of Sears's claim of error, the Court of Special Appeals stated:

> The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This right is extended to the states by the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 8 (1964). The privilege against self-incrimination is also guaranteed under Article 22 of the Maryland Declaration of Rights. *Smith v. State*, 394 Md. 184, 210 (2006). Article 22 of the Maryland

Declaration of Rights provides in part: "[N]o man ought to be compelled to give evidence against himself in a criminal case."

We have recently discussed the law applicable to invocations of an appellant's right to counsel following an initial waiver of that right, and stated:

> In *Miranda v. Arizona*, 384 U.S. 436, the United States Supreme Court put into place "'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" *Lee v. State*, 418 Md. 136, 149 (2011) (quoting *Florida v. Powell*, 559 U.S. 50 (2010)) (internal quotation marks omitted). If a suspect knowingly and intelligently waives his right to counsel during a custodial interrogation, "law enforcement officers are free to question him." *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *North Carolina v. Butler*, 441 U.S. 369, 372-76 (1979)). "But, if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)).

*Wimbish v. State*, 201 Md. App. 239, 249-50 (2011), *cert. denied*, 424 Md. 293 (2012).

The critical issue is whether Sears's question — "[I]s there a lawyer I can speak with?" — qualifies as a clear invocation of his right to counsel. The seminal case on this issue is *Davis v. United States*, 512 U.S. 452 (1994).

In *Davis*, the petitioner waived his right to remain silent and his right to counsel prior to making a statement to investigating authorities. *Id.* at 455. About an hour and a half into the interview, Davis said: "Maybe I should talk to a lawyer." *Id.* The investigators then made clear to Davis that all questioning would cease until a lawyer arrived, and that, unless Davis clarified his statement, they would stop questioning him. *Id.* Davis then clarified his position by saying: "[N]o, I'm not asking for a lawyer." *Id.* Questioning resumed for another hour until Davis made a specific request for a lawyer. *Id.*

On appeal, Davis asserted that all statements made after he said "[m]aybe I should talk to a lawyer" should have been suppressed. The Supreme Court disagreed. The Court held that an "objective inquiry" was required to determine whether one's right to counsel had been properly invoked, and that invocation "'requires, at minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Id.* at 459 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). A proper invocation of the right to counsel must articulate the "desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* Short of this, the law does not

16

require officers to cease questioning.  *Id.* (citing *Moran v. Burbine*, 475 U.S. 412, 433 n.4 (1986)).  Additionally, the law does not require officers to ask clarifying questions where ambiguity may exist.  *Id.* at 461.

The *Davis* Court emphasized that the statement invoking the right to counsel must be unequivocal.  The Court stated:  "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questions."  *Id.* at 459.  "Rather, the suspect must unambiguously request counsel. ... If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect."  *Id.*  The Court held that Davis's statement "[m]aybe I should talk to a lawyer" was not an unequivocal request for counsel, and therefore, it did not require officers to cease questioning.

We subsequently applied *Davis*'s holding in *Matthews v. State*, 106 Md. App. 725 (1995).  In that case, a suspect asked "Where's my lawyer?" two to three times during the interrogation.  *Id.* at 737.  We explained:

> Even if we were to concede that Matthews's question, "Where's my lawyer?" might have indicated that he wanted the assistance of counsel, as we read the language of *Davis*, that is not enough to require the immediate cessation of interrogation.  While we can speculate that it *might* have been such a request *in appellant's mind*, the statement *to the officers* was not unambiguous and unequivocal.  As the *Davis* Court held, "might," in terms of *Miranda*, is not enough.

*Id.* at 738 (emphasis in original).

More recently, this Court again dealt with the issue of valid invocation of the right to counsel in *Wimbish*.  In that case, Wimbish asked "What about my lawyer?" a few seconds into his interview with police and added "Can I get a lawyer?" a few minutes later.  201 Md. App. at 254-57.  We held that those statements were not unequivocal requests to have a lawyer present.  Later in the interview, Wimbish made a valid request for counsel saying: "I'm not gonna talk no more.  Where my lawyer at?  Can I get a lawyer?  Can I call my lawyer?" followed by "You all can't talk to me no more because I've asked for my lawyer." *Id.* at 260.  *Cf. Ballard v. State*, 420 Md. 480, 494 (2011) (holding that defendant had unequivocally invoked his right to counsel when he stated: "You mind if I say no more and just talk to an attorney about this .... I'd feel more comfortable with one.").

Here, we conclude that Sears's inquiry as to whether there was a lawyer he could speak with was not an unequivocal invocation of the right to consult an attorney.  As we stated in *Wimbish*, the comment indicated at most that he *might* want to speak to an attorney, and such expressions "do not require the cessation of questioning." *Davis*, *supra*, 512 U.S. at 459.

(ECF No. 1-1 at 16-20 (alterations in original).) The Court of Special Appeals concluded that the circuit court "did not err in denying the motion to suppress." (*Id.* at 20.)

It is clear from the foregoing that the opinion of the Court of Special Appeals was not "contrary to" or an "unreasonable application of" clearly established federal law, 28 U.S.C. § 2254(d)(1), specifically *Davis*. The court reasonably applied relevant Supreme Court precedent to Sears's case. Sears has provided a basis on which to question the appellate court's decision, and this Court might well have reached a different conclusion if confronting the issue in the first instance, but clearly "fair-minded jurists could disagree" here, rendering the state court ruling unassailable in this federal habeas context. *See Harrington*, 562 U.S. at 101 (stating that federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision").

It is also clear that the court's decision was not based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); *Wood*, 558 U.S. at 301, as indicated by its summary of the facts of the case, and, in particular, the suppression hearing testimony. The court presumes the state court's factual determination to be correct. *Id.* § 2254(e)(1). Sears has not met his burden of rebutting that presumption by clear and convincing evidence. *See id.*

The Court finds Sears's claim of error to be wanting, and, accordingly, rejects the claim.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck v. Davis*, _ U.S._, 137 S. Ct. 759, 773 (February 22 2017) (citing *Miller-El v. Cockerell*, 537 U.S. 322, 336 (2003)).

To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Sears has failed to make a substantial showing that he was denied a constitutional right, and the Court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Accordingly, a certificate of appealability shall not issue.[9]

## CONCLUSION

For the above reasons, the Court concludes that Sears's petition provides no basis for habeas corpus relief. Accordingly, the petition is DENIED and DISMISSED.

A separate order follows.


June 26, 2017
Date

/s/
James K. Bredar
United States District Judge

---

[9] Denial of a certificate of appealability in the district court does not preclude Sears from requesting one from the United States Court of Appeals for the Fourth Circuit.